UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AUSTIN HITCH, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

CELLCO PARTNERSHIP, a foreign general partnership doing business as VERIZON WIRELESS, et al.,

Defendants.

CASE NO. 2:25-cv-01469-TL

ORDER REMANDING CASE

This matter is before the Court *sua sponte*.[1] Having reviewed the record, and finding oral argument unnecessary, LCR 7(b)(4), the Court finds that it lacks subject-matter jurisdiction over this action. Therefore, pursuant to 28 U.S.C. § 1446(c), the Court REMANDS the case to King

[1] The Court acknowledges that Defendant has had a motion to dismiss pending since October 2025. The Court regrets the length of time it has taken to reach this case, which is due to its trial schedule last fall and to the drastic increase in immigration habeas petition filings this year. Between January 2026 and October 2026, the Western District of Washington received over 1,600 habeas corpus petitions filed by individuals in immigration detention, compared to 118 in the same period in 2025. A petition for writ of habeas corpus is uniquely urgent, as it is "entitled by statute to special, preferential consideration to [e]nsure expeditious hearing and determination." *Van Buskirk v. Wilkinson*, 216 F.2d 735, 737–38 (9th Cir. 1954). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from [her]." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (quoting *Ruby v. United States*, 341 F.2d 585, 587 (9th Cir. 1965)). Also, more than 740 non-prisoner civil cases were filed between January 2026 and September 2026 than during the same period in 2025.

County Superior Court. *See D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008) ("Federal courts are *required* sua sponte to examine jurisdictional issues such as standing." (quoting *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2001))).

## I. BACKGROUND

### A. Parties

The Named Plaintiffs[2] are individuals who were employed by Defendant Verizon during the time period relevant to this case. *See.* Dkt. No. 17 ¶¶ 17–19. With regard to Defendants, the respective roles of, and relationships between, these Parties is ambiguous. Plaintiffs identify Defendants Cellco Partnership ("Cellco") and Seattle SMSA Limited Partnership ("Seattle SMSA") as "foreign general partnership[s] that regularly transact[] business in King County, Washington." *Id.* ¶¶ 21, 22. On the face of the complaint, however, it is unclear what, if anything, these foreign limited partnerships do, and how they are (or are not) affiliated with each other and/or with Defendant Verizon. More to the point, it is unclear what, if anything, these foreign limited partnerships did *to Plaintiffs*. As alleged, Defendant Verizon employed and compensated the Named Plaintiffs (*see id.* ¶ 39), and Defendant Verizon imposed upon the Named Plaintiffs the Code of Conduct that forms the basis of this lawsuit (*see id.* ¶¶ 28–38). Still, in any event, for the purpose of this Order, it is unnecessary to resolve these ambiguities, and it is sufficient for the Court to consider the Named Plaintiffs as having been employed by Defendant Verizon.

### B. The Verizon Code of Conduct

As Verizon employees, the Named Plaintiffs were subject to the terms of a company Code of Conduct, which maintained the following policy regarding outside employment:

---

[2] As used in this Order, the term "Named Plaintiffs" excludes Henry Sok, who has been dismissed from this action. *See* Dkt. No. 32 (notice of voluntary dismissal).

> You may not—with or without compensation—be self-employed or employed by, consult with, own, perform services for, or aid: (i) a company or organization (including a charitable organization) that is a vendor, supplier, partner, contractor, subcontractor, or competitor of Verizon; or (ii) a company that provides services that are provided by Verizon, or that Verizon is seeking to provide.

*Id.* ¶ 30; *see id.* at 33 (Code of Conduct). During training, Verizon employees are further instructed:

> **As V Teamers, we focus on what's best for Verizon and our customers**. That means that we avoid conflicts of interest and we sell with integrity. We never: (i) Hire or supervise close friends or family members; (ii) Do work for Verizon's competitors or partners while employed by Verizon; (iii) Trade securities based on confidential information we know as a result of our jobs; (iv) Solicit colleagues or vendors to support our personal charities.

*Id.* ¶ 34.

**C. Non-competition Covenants in Washington**

Chapter 49.62 RCW governs non-competition covenants in Washington. Under Washington law, the definition of "'noncompetition covenant' includes every written or oral covenant, agreement, or contract by which an employee or independent contractor is prohibited or restrained from engaging in a lawful profession, trade, or business of any kind." RCW 49.62.010(4). By statute, it is unlawful for an employer to subject modest- and low-paid workers to such covenants: "In Washington, employers who pay their employees less than twice the minimum wage cannot prohibit them from working second jobs, subject to a few, limited exceptions." *David v. Freedom Vans LLC*, 4 Wn.3d 242, 244, 562 P.3d 351 (2025) (discussing RCW 49.62.070). But the manner by which the law may be enforced against allegedly non-complying employers depends on the circumstances. Where an employer violates the law by imposing a non-competition covenant on employees protected by the statute, the State, through the Office of the Attorney General, may pursue relief "on behalf of" the employees.

RCW 49.62.080(1). Where a person is "aggrieved by a noncompetition covenant," however, they may bring a cause of action privately. *Id.*

**D. Procedural Background**

On July 2, 2025, Plaintiff Austin Hitch filed a class-action complaint in King County Superior Court against Defendants Cellco, Seattle SMSA, and 20 Doe Defendants. Dkt. No. 1-2 (state-court complaint). Plaintiff pleaded a single cause of action, alleging a violation of the non-competition covenant statute. *See id.* ¶¶ 38–46. On August 4, 2025, Defendants removed the case to federal court, asserting subject-matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) (*see* Dkt. No. 1 (notice of removal) at 3), and also asserting federal-question subject-matter jurisdiction, "because the purported state law claims pled in Plaintiff's Complaint arise out of Section 301 of the Labor Management Relations Act ('Section 301'), 29 U.S.C. § 185" (*id.* at 9).

On September 2, 2025, Plaintiffs filed an amended complaint. Dkt. No. 17. Plaintiffs added three additional named Plaintiffs—Diana Garcia-Mozqueda, Mark Simoneau, and Henry Sok[3]—and one additional Defendant, Verizon. *See id.* at 1. Plaintiffs maintained the same single cause of action that had been pleaded in the original complaint. *See id.* ¶¶ 100–109.

On September 16, 2025, Defendants filed the instant motion to dismiss. Dkt. No. 20.

On June 30, 2026, Plaintiffs moved to certify their class. Dkt. No. 39.

## II. LEGAL STANDARD

Federal courts are constrained by the case-and-controversy requirement of Article III, which limits the jurisdiction of federal courts to cases where plaintiffs have established standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "Standing" exists where a plaintiff is

[3] On May 4, 2026, Plaintiffs voluntarily dismissed Plaintiff Sok from the action. Dkt. No. 32.

entitled to bring their claims before the court, and it is an essential ingredient of a court's jurisdiction. *See Perry v. Newsom*, 18 F.4th 622, 630–31 (9th Cir. 2021); *Cetacean Community v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) ("A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit."). In order to have standing to bring a lawsuit, a plaintiff must demonstrate an injury that is (1) "concrete, particularized, and actual or imminent" (i.e., an "injury-in-fact"), that is (2) "fairly traceable to the challenged action," and (3) "redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

## III. Discussion

### A. Standing

Federal "[c]ourts have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1102 (N.D. Cal. 2023) (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). "[I]f a plaintiff lacks standing, the court lacks jurisdiction." *Rodriguez v. Old West Export, Inc.*, 711 F. Supp. 3d 1182, 1188 (E.D. Cal. 2024). Accordingly, the Court has an obligation to determine whether Plaintiffs have standing.

"Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins (Spokeo II)*, 578 U.S. 330, 341 (2016). This means that "a plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Robins v. Spokeo, Inc. (Spokeo III)*, 867 F.3d 1108, 1112 (9th Cir. 2017) (quoting *Spokeo II*, 578 U.S. at 341); *see Stutsman v. Sirius XM Radio LLC*, No. C25-1113, 2026 WL 2445129, at *2 (W.D. Wash. Aug. 20, 2026) ("[T]he legislature's creation of a statutory prohibition or

obligation and a cause of action 'does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III[.]'" (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021))).

Here, Defendants argue in their motion to dismiss that the Named Plaintiffs have not alleged an injury-in-fact. Dkt. No. 20 at 21. (Defendants marshal this argument in support of dismissal, not remand). Defendants' position is that although the Named Plaintiffs were, as Verizon employees, subject to the Code of Conduct's restriction on outside employment, Verizon never sought to enforce the policy against them, because none of them actually obtained (or even got close to obtaining) outside employment. As explained by Defendants, "Plaintiffs have not alleged that they sought to seek a second job during their employment with [Verizon]. Instead, they speculate only that they 'would have' applied for a job but for the [Code of Conduct] and related training materials." *Id.* In other words, the harm suffered by the Named Plaintiffs was merely speculative and hypothetical. In response, the Named Plaintiffs argue that "the inclusion of such [outside-employment] restrictions in . . . workers' employment agreements is injury enough." Dkt. No. 24 at 16–17.

The Court agrees with Defendants. Certainly, precedent establishes that the definition of injury-in-fact is sufficiently broad to include harm that has not yet occurred: "[T]he possibility of future injury may be sufficient to confer standing on plaintiffs; threatened injury constitutes 'injury in fact.'" *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 947 (9th Cir. 2002). However, a threatened or future injury only satisfies Article III where a plaintiff "is *immediately* in danger of sustaining some *direct* injury as the result of the challenged . . . conduct and the injury or threat of injury is both real and immediate, not conjectural or hypothetical." *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1142 (9th Cir. 2010) (quoting *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 656 (9th Cir. 2002)).

Here, the trouble is with the immediacy of the Named Plaintiffs' alleged injury. Plaintiff Hitch alleges, "But for Verizon binding him to its Outside Employment Covenants, Mr. Hitch would have explored opportunities to supplement his income by moonlighting at other telecommunications companies, companies providing wireless and home internet, companies providing mobile and home phone services, and/or companies providing television services." Dkt. No. 17 ¶ 55. As any job seeker will admit, though, the distance between "explor[ing] opportunities" and collecting a paycheck is vast. This gulf renders the alleged harm here anything but immediate. Indeed, "exploring opportunities" is something even less committal than "looking for work." Before Defendant Verizon could have enforced the offending provision in the Code of Conduct against Plaintiff Hitch, he would have presumably needed to: (1) decide to seek employment; (2) identify a job; (3) apply for the job; (4) be offered the job; (5) accept the offer; and (6) begin working. And beyond that, Defendant Verizon would have needed to: (7) find out about the outside employment; (8) object to it specifically; and (9) take adverse action against Plaintiff Hitch. As alleged, none of this happened.

And what did happen—Plaintiff Hitch's non-exploration of "opportunities to supplement his income" (*id.*)—is simply too attenuated from the ambit of Verizon's policy, which particularly prohibits "self-employ[ment]," "employ[ment]" (Dkt. No. 17 ¶ 33), or "[d]oing work for" (*id.* ¶ 34). Nor is it reasonably considered injury, given that nearly anyone who is not looking for a job is also "not exploring opportunities to supplement their income." *See Chung v. Garda CL Nw., Inc.*, No. C26-147, 2026 WL 2516865, at *1 (W.D. Wash. May 11, 2026) (in similar case involving the same statute, doubting plaintiffs' establishment of standing where injury-in-fact appeared to be based on the "assum[ption] that every current or former employee in the class desired an additional job and would have obtained one if allowed to do so"). Similarly, Plaintiffs Garcia-Mozqueda and Simoneau, who also "would have explored

opportunities to supplement [their] income," do not appear to have sustained concrete injury. *Id.* ¶¶ 65, 76.

**B. Remand**

Having determined that it lacks subject-matter jurisdiction, the next question is how the Court should dispose of the case. On this, Federal Rule and statute conflict with one another. Under Federal Rule of Civil Procedure 12(h)(3), "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." But under 28 U.S.C. § 1447(c), "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." The Ninth Circuit has recognized, but not reconciled, these contradictory mandates. *See Sauk-Suiattle Indian Tribe v. City of Seattle*, 56 F.4th 1179, 1189 n.14 (9th Cir. 2022) ("We need not and do not address [defendant's] argument regarding the apparent conflict between § 1447(c) and Rule 12(h)(3)[.]").

Recently, however, the Fourth Circuit appeared to hold that the deciding factor in whether to apply Section 1447(c) or Rule 12(h)(3) is the forum in which the case was originally filed. "[J]ust as a district court must dismiss a case originally filed in federal court if it 'determines at any time that it lacks subject-matter jurisdiction,' Fed. R. Civ. P. 12(h)(3), it also must remand whenever it reaches the same conclusion about a case that was removed from state court, see 28 U.S.C. § 1447(c)." *ColonialWebb Contractors Co. v. Hill Phoenix, Inc.*, 175 F.4th 253, 258 (4th Cir. 2026). And Judge Fletcher's concurrence in *Sauk-Suiattle* would appear to support this position: "Once . . . the district court correctly concluded that it did not have original subject matter jurisdiction . . . , the required course would have been for the district court to remand the suit to the state court as improperly removed." *Sauk-Suiattle*, 56 F.4th at 1191 (W. Fletcher, J., concurring). Therefore, although Defendants obliquely argue on reply that a

lack of constitutional standing demands that this case be dismissed (*see* Dkt. No. 26 at 8), the Court will remand this matter to state court.

## IV. CONCLUSION

Accordingly, this Court is REMANDED to King County Superior Court. Defendants' motion to dismiss (Dkt. No. 20) and Plaintiffs' motion to certify class (Dkt. No. 39) are TERMINATED.

Dated this 5th day of November 2026.

Tana Lin
United States District Judge