UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AUSTIN HITCH, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

CELLCO PARTNERSHIP, a foreign general partnership doing business as VERIZON WIRELESS, et al.,

Defendants.

CASE NO. 2:25-cv-01469-TL

ORDER ON MOTION FOR RECONSIDERATION

This matter is before the Court on Defendants' motion for reconsideration (Dkt. No. 57) of the Court's order that remanded this case to King County Superior Court (Dkt. No. 56). Having reviewed the motion and the relevant record, the Court DENIES Defendants' motion.

## I. BACKGROUND

The Court assumes familiarity with the factual background of this case. *See* Dkt. No. 56 at 2–4. In a *sua sponte* order issued November 5, 2026, the Court concluded that it lacked subject-matter jurisdiction over this case and remanded it to King County Superior Court. *See id.*

at 8. Under Local Civil Rule 3(i),[1] the remand is scheduled to be effectuated on November 19, 2026.

On November 16, 2026, Defendants filed the instant motion for reconsideration (Dkt. No. 57) and, concurrently, a motion to stay the remand pending the resolution of the motion for reconsideration (Dkt. No. 58).

## II. LEGAL STANDARD

"Motions for reconsideration are disfavored." LCR 7(h)(1). Such motions are ordinarily denied absent "a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to [the court's] attention earlier with reasonable diligence." *Id.* Absent such a showing, motions for reconsideration should be granted only in "highly unusual circumstances." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)); *see also Inventist, Inc. v. Ninebot Inc.*, 664 F. Supp. 3d 1211, 1215 (W.D. Wash. 2023) (noting that reconsideration is an "extraordinary remedy" and that the moving party bears a "heavy burden" (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000))). "A motion for reconsideration 'may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.'" *Marlyn Nutraceuticals*, 571 F.3d at 880 (quoting *Kona Enters.*, 229 F.3d at 890). "Whether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing *Kona Enters.*, 229 F.3d at 883).

---

[1] "Unless otherwise ordered by the court, an order transferring a case to another district or remanding a case shall become effective 14 days after the date the order is filed." LCR 3(i).

## III. Discussion

Defendants present three bases for reconsideration. First, Defendants argue that the Court's analysis of Plaintiffs' Article III standing implicated the merits of their claim. *See* Dkt. No. 57 at 1–2. Second, Defendants argue that the Court has subject-matter jurisdiction pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, which makes remand inappropriate. *See id.* at 2. Third, Defendants argue that the Court did not consider "the record before it" when determining whether Plaintiffs had established Article III standing. *See id.* at 6. The Court will address these in turn.

### A. Jurisdiction vs. Merits

Defendants argue that the Court's "analysis about whether Plaintiffs suffered an injury for purposes of Article III standing turned on the merits of their statutory claim under RCW 49.62.070." *Id.* at 2. Defendants rely on *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold and Easement in the Cloverly Subterranean Geological Formation*, in which the Ninth Circuit held that "[a]s a general rule, when '[t]he question of jurisdiction and the merits of [the] action are intertwined,' dismissal for lack of subject matter jurisdiction is improper." 524 F.3d 1090, 1094 (9th Cir. 2008) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).

The Court disagrees with Defendants and finds *Williston Basin* inapposite. There is no "intertwining" of standing and merits here, so the general rule is not invoked. Simply put, the Court found that Plaintiffs had not been injured; the merits of the claim are irrelevant, because Plaintiffs have not been admitted through the metaphorical courtroom doors. As discussed in the Order, the Court concluded that "non-exploration of 'opportunities to supplement . . . income'" was not an injury-in-fact. Dkt. No. 56 at 7. That Plaintiffs had not been injured *by* Defendants' non-competition policy is wholly extraneous to that finding. After all, when someone presents

without an injury, consideration of what has *not* injured them is limited only by the bounds of imagination. When the courthouse remains standing and intact, it has not been destroyed by an earthquake. When a scuba diver returns to land unscathed, they have not been attacked by a shark. And when an employee's employment and broader livelihood proceeds without interruption, they have not been harmed by their employer's policy on outside employment.

Defendants attempt to illustrate their position with reference to a hypothetical: "[A] federal court would lack jurisdiction over an employment discrimination claim for lack of Article III standing if a defendant established that it did not discriminate, *because no discrimination means no injury*." Dkt. No. 57 at 3 (emphasis added). This is patently untrue. Consider a Title VII plaintiff who sues their employer for employment discrimination after being terminated. Upon application of the *McDonnell Douglas* framework, a court might find that the defendant–employer had proffered a legitimate, nondiscriminatory rationale for terminating the plaintiff–employee and, consequently, rule against the employee. No discrimination. But such a conclusion does not render the plaintiff *un*-terminated; they are still out of a job. That is, they have still been injured. No discrimination does not mean no injury.

Therefore, Defendants' first basis for reconsideration fails to demonstrate manifest error.

**B. Section 301**

Defendants' LMRA-based argument is also unavailing. Injury is part of standing, and standing is part of jurisdiction. The Court's jurisdiction in a given case cannot be perfected simply by pointing to the federal statute that may or may not provide the governing law. Federal-question subject-matter jurisdiction does not automatically confer standing, even in removed cases where the federal court's subject-matter jurisdiction is predicated on Section 301 of the LMRA. *See, e.g.*, *Scruggs v. Brown*, No. C02-2441, 2002 WL 1585531, at *1 (N.D. Cal. July 10, 2002) (remanding case where plaintiff lacked standing, and finding that "the question of whether

plaintiff's claims are preempted by the LMRA . . . may properly be decided by the state court," as the state court has concurrent jurisdiction over controversies involving collective-bargaining agreements and must apply federal law in deciding those claims (citing *United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 368 (1990))).

In any event, the language of the relevant collective bargaining agreement ("CBA") here would seem to render Defendants' argument potentially spurious. In arguing that Section 301 requires preemption, Defendants assert that "[r]emand would . . . bypass the grievance and arbitration procedures Cellco and [Plaintiffs' union] contractually negotiated." Dkt. No. 57 at 5. But the supposed grievance that would be "bypass[ed]" is not contractually subject to those grievance and arbitration procedures. In their Notice of Removal, Defendants, as they must, invoke the provision of the CBA that they assert is implicated in this case *See* Dkt. No. 1 (notice of removal) at 10; *Cramer v. Consol. Freightways Inc.*, 255 F.3d 683, 691–92 (9th Cir. 2001) ("[A]lleging a hypothetical connection between the claim and the terms of the CBA is not enough to preempt the clam: adjudication of the claim must require interpretation of a provision of the CBA."); *Densmore v. Mission Linen Supply*, 164 F. Supp. 3d 1180, 1194 (E.D. Cal. 2016) (rejecting pre-emption argument where, *inter alia*, defendant "failed to point out any specific provisions in the CBAs that are subject to dispute"). Defendants refer to a provision in the CBA under which the bargaining unit "agree[s] to the application of Cellco's 'reasonable rules and regulations.'" Dkt. No. 1 at 10. However, this provision, which appears in Article 1 of the CBA, titled "Management Rights" (Dkt. No. 5-1 at 9), is not subject to grievance or arbitration. *See id.* ("The Union understands that any issue covered by this Management Rights Clause shall not be subject to Article 31, Grievance Procedure, and Article 32, Arbitration.").[2] Should Defendants

[2] In their motion, Defendants also argue that resolving Plaintiffs' claim "requires considering . . . any applicable scheduling obligations" in the CBA. Dkt. No. 57 at 4. But this is the first time Defendants have drawn any

disagree, the state court is competent to hear and adjudicate their position.

Moreover, the Court is unpersuaded by Defendants' insistence that Plaintiffs' cause of action necessarily implicates the CBA. Plaintiffs' claim—that the noncompetitive language in Verizon's code of conduct violates state law (*see* Dkt. No. 17 (amended complaint) ¶¶ 100–109)—is quite clearly one that "may be litigated without reference to the rights and duties established in a CBA[.]" *Cramer*, 255 F.3d at 691. It is a state-law issue. *See Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1060 (9th Cir. 2007) ("[R]eliance on the CBA as an aspect of a defense is not enough to 'inject a federal question into an action that asserts what is plainly a state-law claim.'" (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987) (citation modified))). The CBA need not be interpreted to consider whether its terms substantially intersect with Washington's non-competition-covenant law and, in any event, "a court may look to the CBA to determine whether it contains a clear and unmistakable waiver of state law rights without triggering [section] 301 preemption." *Id.* (quoting *Cramer*, 255 F.3d at 692). Regardless, the issue on which Defendants hang their jurisdictional hat falls under the umbrella of "subject matters" for which "[t]he Union clearly and unmistakably [has] waive[d] the right to bargain," (Dkt. No. 5-1 at 9), rendering state law, not the CBA, the definitive and ultimate source of authority on the matter.

---

connection between employee work schedules and the outside-employment rule at issue in this case. In their Notice of Removal, Defendants refer exclusively to the CBA's "provision agreeing to the application of Cellco's 'reasonable rules and regulations'"—that is, Article 1, Paragraph 8. Dkt. No. 1 at 10 (quoting Dkt. No. 5-1 at 9). Defendants might have referred to work scheduling, which is covered by Article 11 of the CBA (*see* Dkt. No. 5-1 at 20)—and which is not, presumably, subject matter about which the Union has "clearly and unmistakably waive[d] the right to bargain"—when they originally asserted their basis for removal jurisdiction. But they did not. Doing so here, in a motion for reconsideration, is not appropriate. *See ARCO Env't Remediation, L.L.C. v. Dep't of Heath & Env't Quality of the State of Mont.*, 213 F.3d 1108, 1117 (9th Cir. 2000) ("The Notice of Removal 'cannot be amended to add a separate basis for removal jurisdiction after the thirty day period." (quoting *O'Halloran v. Univ. of Wash.*, 856 F.2d 1375, 1381 (9th Cir. 1988))).

Therefore, Defendants' second basis for reconsideration fails to demonstrate manifest error.

**C. The Record Before the Court**

Finally, Defendants assert that the Court "should have considered standing based on the record before it, rather than the pleadings alone." Dkt. No. 57 at 6. Defendants point to excerpts from Plaintiffs' respective depositions, which they reprint in their motion. *Id.* None suffices to establish standing.

As to Plaintiff Hitch, Defendants assert that he "described his damages as the wages he earned below [double minimum wage], plus the money he 'could make . . . running [his] own business or working for someone else.'" *Id.* But this is *not* how Plaintiff Hitch "described his damages." In the deposition, Plaintiff Hitch asserted that he actually did not know what his damages were. *See* Dkt. No. 50 at 59 (Hitch Dep.). The only concrete "damages" that Plaintiff Hitch identified was $5,000, which represented his "understanding of how much [he] [could] recover from this lawsuit financially." *Id.* at 58. This sum represents the "statutory penalty" prescribed by the state legislature for an employer's violation of the statute. *See* RCW 49.62.080(2). The language of the statute, which provides for an award of a plaintiff's "actual damages *or* a statutory penalty of five thousand dollars," *id.* (emphasis added), clearly contemplates a distinction between damages and the $5,000 penalty. Where Hitch asserts his entitlement to $5,000, he is not necessarily referring to "damages."

As to Plaintiff Simoneau, Defendants assert that "[h]e claims monetary damages between $20,000 and $30,000 per year." Dkt. No. 57 at 6. But Plaintiff Simoneau offered no justification for this number and explained that he had provided it extemporaneously, "[i]f you want to put a number on it[.]" Dkt. No. 50 at 127 (Simoneau Dep.). Plaintiff Simoneau's credibility as to the monetary harm he purportedly suffered is also undermined by his assertion that, with respect to

this case, "[money]'s not really what's important to me." *Id.* Moreover, until pressed by Defendants' counsel to speculate further, Plaintiff Simoneau, like Plaintiff Hitch, only referred the $5,000 statutory award. *See id.*

Finally, as to Plaintiff Garcia-Mozqueda, Defendants offer only that she "testified she was harmed because she felt restricted from seeking other job opportunities that could have paid her more." Dkt. No. 57 at 6. The Court has already determined that this, in and of itself, is not concrete injury for Article III purposes. *See* Dkt. No. 56 at 7.

Therefore, Defendants' third basis for reconsideration fails to demonstrate manifest error.

*   *   *

Having considered Defendants' grounds for reconsideration, the Court concludes that it did not commit manifest error when remanding this case and, accordingly, DENIES Defendants' motion. Defendants' motion to stay, which seeks to stay the Remand Order pending the Court's decision on reconsideration (*see* Dkt. No. 58 at 2), is DENIED AS MOOT.

## IV. Conclusion

Accordingly, Defendants' motion for reconsideration (Dkt. No. 57) and motion to stay (Dkt. No. 58) are DENIED. In accordance with Local Civil Rule 3(i), this case SHALL be remanded to King County Superior Court on November 19, 2026.

Dated this 18th day of November 2026.

Tana Lin
United States District Judge